1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7     MYRAH MARTINEZ, et al.,
                                              Case No.  15-cv-01953-JST
            Plaintiffs,

8
            v.
                                              **ORDER GRANTING IN PART AND**
9                                             **DENYING IN PART MOTION TO**
      COUNTY OF SONOMA, et al.,               **DISMISS**
10
            Defendants.                       Re: ECF No. 10
11

12          Plaintiffs Myrah Martinez, Kitara McCray, Madison Marlene Marvel, Star Smith, and

13   R.M., a minor (collectively, "Plaintiffs"), have filed this Section 1983 action against Defendants

14   County of Sonoma ("the County"), Sonoma County Human Services Department ("HSD"),

15   Sonoma County Family, Youth and Children's Services ("FYCS"), Director of Human Services

16   for Defendant HSD Jerry Dunn, Director of Defendant FYCS Nick Honey, Administrator and

17   Manager of the Valley of the Moon Children's Home Stacie Kabour, and Defendant Does 1 to

18   100, "who are and/or were officers, agents, employees, contractors, subcontractors, or other

19   persons and or entities who . . . ordered, participated in and or condoned the abuses of Plaintiffs"

20   and their proposed class.  ECF No. 10 at ¶¶ 5-16.  Defendants have moved to dismiss the

21   complaint.  For the reasons set forth below, the Court will grant in part and deny in part

22   Defendants' motion to dismiss.

23   I.     **BACKGROUND**

24          A.     **Factual and Procedural Background[1]**

25          Valley of the Moon Children's Home ("VMCH") is a temporary housing facility for

26   juveniles who have been removed from their homes while they await placement in foster care.

27   ───────────────

28   [1] For the purposes of this order, the Court accepts as true all of the well-pled factual allegations
     contained in Plaintiff's First Amended Complaint ("FAC").

United States District Court
Northern District of California

ECF No. 10 at 1.  Sonoma County operates this emergency shelter for abused and neglected children who have been removed from their homes.  Id. at 1; ¶ 18.  Defendant Kabour operates VMCH under the direction of Defendants HDS, FYCS, and its administrators, Defendants Dunn and Honey.  Id. at ¶ 18.  Plaintiffs were juveniles placed in Valley of the Moon Children's Home for various periods between 1995 and 2014.  Id. at ¶ 6-9.  Plaintiffs claim that employees of VMCH violated class members' federal and state rights pursuant to customs and policies promulgated by Defendants.  Id. at ¶ 21-32.  Specifically, Plaintiffs allege that all female class members were subject to regular strip searches, and that Defendant Does regularly searched the belongings of all class members, restricted access to their cell phones, physically restrained them, locked them in rooms, prevented them from talking to family and friends, and denied them access to private telephone conversations.  Id. at 1-2.

Plaintiff Myrah Martinez is a 20 year old who was housed in VMCH several times from 1995 through 2005.  Id. at ¶ 21.  Plaintiff Martinez was strip searched over twenty times while she was housed at VMCH.  Id.  These strip searches, which sometimes occurred by force, required her to strip naked and have private parts of her body inspected.  Id.  Her personal possessions were also searched daily after returning to VMCH from school or other outside activities.  Id.

Plaintiff Kitara McCray is an 18 year old who was housed in VMCH for three months beginning in September 2012.  Id. at ¶ 6.  "[W]henever she returned from school or an outside activity," Plaintiff McCray was required submit to bodily searches, including a search of her bra whereby she was required to "pull her [bra] away from her body and expose her breasts."  Id. at ¶ 22.  Plantiff McCray was also required to submit to searches of her backpack and personal possessions upon returning to VMCH.  Id. at ¶ 22.

Plaintiff Madison Marlene Marvel is a 19 year old who was housed in VMCH during 2011.  Id. at ¶ 7.  Plaintiff Marvel was strip searched upon entry to VMCH and required "to expose private parts of her body for inspection."  Id. at ¶ 23.  In addition to having her personal possessions searched daily, staff members confiscated Marvel's phone while she was at VMCH and Marvel could only use the phone to communicate with the staff's prior approval of the number she sought to dial or the call she sought to receive.  Id.

1   Plaintiff Star Smith is an 18 year old who was housed in VMCH during 2011.  Id. at ¶ 8.

2   Plaintiff Smith was strip searched upon entry to VMCH by a female staff member, who required

3   Ms. Smith to "strip to her bra and underwear and to 'shake out' her bra, exposing her breasts."  Id.

4   at ¶ 24.  Male staff members also strip searched her in this manner on at least two occasions.  Id.

5   Plaintiff R.M. is a 17 year old who was housed in VMCH at various times from the age of

6   6 through 2014.  Id. at ¶ 9.  Plaintiff R.M. had his person and possessions searched every time he

7   returned to VMCH.  Id. at ¶ 25.  He was also "placed in restraints, locked in rooms, denied access

8   to his twin brother who was also housed at VMCH while R.M. was there, and . . . was subjected to

9   extreme psychological abuse."  Id.

10   Plaintiffs assert that these individualized experiences represent the customs, policies, and

11   practices promulgated by Defendants. Id. at ¶ 30.  Plaintiffs also allege Community Care

12   Licensing, a division of the California Department of Social Services, has investigated and cited

13   VMCH for "seizures of residents' cell phones, unreasonable searches of personal possessions,

14   denial of opportunity to make confidential telephone calls, locking of bedrooms thereby denying

15   residents the opportunity to enter their own rooms, and other deficiencies."  Id. at ¶ 31.

16   Additionally, "incident reports establish the use of unjustifiable restraints (610 within the last five

17   years, 41 resulting in injuries), and sexual abuse and assault."  Id.

18   In response to the violations he suffered at VMCH, Plaintiff R.M. submitted a

19   governmental claim to the Board of Supervisors for the County of Sonoma on April 23, 2015.  Id.

20   at ¶ 2.  Subsequently, all plaintiffs filed a putative class action complaint against defendants on

21   April 30, 2015.  ECF No. 1.  Plaintiffs submitted a First Amended Complaint ("FAC") on May 08,

22   2015.  ECF No. 10.  Plaintiffs bring the following claims: (1) Unlawful Searches (Violation of the

23   Fourth and Fourteenth Amendment; 42 U.S.C. §1983); (2) Unlawful Restraint (Violation of the

24   Fourth and Fourteenth Amendment; 42 U.S.C. §1983); (3) Unlawful Seizure of Property

25   (Violation of the Fourth and Fourteenth Amendment; 42 U.S.C. §1983); (4) Denial of Association

26   (Violation of the First and Fourteenth Amendment; 42 U.S.C. §1983); (5) Special Relationship

27   (Substantive Due Process; Violation of the First, Fourth, and Fourteenth Amendment; 42 U.S.C.

28   §1983); (6) Unlawful Policy, Custom, and/or Practice (Violation of the Fourth and Fourteenth

Amendment; 42 U.S.C. §1983); (7) Failure to Train and/or Supervise (Violation of the Fourth and Fourteenth Amendment; 42 U.S.C. §1983); (8) Unlawful Search (California Welfare and Institutions Code section 16001.9 *et seq.*; California Government Code sections 815.2(a) and 820); (9) Unlawful Restraint (California Welfare and Institutions Code section 16001.9 *et seq.*; California Government Code sections 815.2(a) and 820); (10) Unlawful Seizure of Property (California Welfare and Institutions Code section 16001.9 *et seq.*; California Government Code sections 815.2(a) and 820); (11) Denial of Association (California Welfare and Institutions Code section 16001.9 *et seq.*; California Government Code sections 815.2(a) and 820); (12) Intentional Infliction of Emotional Distress (California Government Code sections 815.2(a) and 820); and (13) violation of the Bane Act (California Civil Code section 52.1 *et seq.*; California Government Code Sections 815.2(a) and 820).  ECF No. 10 at 11-20.

Plaintiffs seek declaratory and injunctive relief, compensatory, general, and special damages, punitive damages, attorneys' fees, and recovery for the cost of the suit.  ECF No. 10 at 21-22.  Defendants filed a motion to dismiss the FAC on June 15, 2015 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege facts sufficient to state any claim for relief and for lack of jurisdiction over the state law tort claims. ECF No. 19 at 6.

### B.      Jurisdiction

As several of Plaintiffs' causes of action arise under Section 1983, this Court has subject-matter jurisdiction over those claims pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

## II.      LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed.R.Civ.P. 8(a)(2); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, <u>556 U.S. 662, 678 (2009)</u> (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir.2005).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984).  "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  However, a dismissal is only appropriate where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) (quotation omitted) (conclusory allegations of conspiracy between public and private actors does not extend 42 U.S.C. § 1983 liability to either).  See Silva v. Di Vittorio, 658 F.3d 1090, 1105 (9th Cir. 2011) (affirming dismissal with prejudice and without leave to amend of RICO claim where "any attempt to re-plead this claim would be futile").  District courts "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).

## III.    ANALYSIS

### A.    Jurisdiction Over State Tort Causes of Action

Plaintiffs allege six causes of action against Defendants under California state law. Defendants allege that Plaintiff R.M. is the only Plaintiff that has adequately pled compliance with the California Government Claims Act, and therefore all other Plaintiffs are barred from bringing a claim for money damages.  ECF No. 19 at 8.  Under the Government Claims Act, any personal injury claims for money damages against a public employee must be filed with the California Victim Compensation and Government Claims Board within six months of accrual of the cause of action that forms the basis of the claim.  Cal. Gov't Code § 911.2(a); see also Ashker v. Cate, No. C 09-2948 CW, 2012 WL 1094436, *7 (N.D. Cal. Mar. 30, 2012).  "Compliance with the CTCA filing requirement is mandatory; failure to file a claim within the requisite time period is a bar to

1    future tort suits." <u>Ashker</u>, 2012 WL 1094436 at *7.[2]

2         Plaintiffs Martinez, Marvel, McCray, and Smith concede that they have not complied with

3    the CTCA, but argue that their non-compliance should be excused under the "delayed-discovery

4    doctrine." ECF No. 23 at 14.  California courts have acknowledged the "delayed discovery

5    doctrine" may toll the presentation requirement.  Under that doctrine, "a cause of action does not

6    accrue until the plaintiff discovers, or has reason to discover, the cause of action," which occurs

7    "when he or she has reason to at least suspect a factual basis for its elements." <u>S.M. v. Los</u>

8    <u>Angeles Unified Sch. Dist.</u>, 184 Cal. App. 4th 712, 717 (2010).  "Suspicion of one or more of the

9    elements, coupled with knowledge of any remaining elements, will generally trigger the applicable

10   limitations period." <u>Id.</u>

11        In support of Plaintiffs' delayed discovery theory, they have pled that they "were unaware

12   of the state law requirement that they file a government claim . . . within six months of when they

13   experienced violations of their statutory and/or constitutional right and did not, until recently, have

14   any opportunity to discuss their experiences in the Valley of the Moon Children's Home with an

15   independent adult." <u>Id.</u>  (citing ECF No. 10 at ¶ 2).  They therefore allege that, because Plaintiff

16   R.M. provided timely notice of the Plaintiffs' claims, the non-compliant Plaintiffs should be able

17   to rely on Plaintiff R.M.'s notice to the Board in order to bring their claims.  <u>Id.</u>

18        Plaintiffs' tolling argument confuses two fundamentally different concepts.  The delayed

19   discovery doctrine *postpones* the date by which a claim must be presented the Board under Section

20   911.2(a), but it does not *entirely excuse* the requirement that a Plaintiff present her claim to the

21   Board.  "The claim-filing requirement is not merely procedural, but is instead a condition

22   precedent to maintaining a cause of action and is therefore an element of a plaintiff's cause of

23   action." <u>S.M.</u>, 184 Cal. 4th at 717.  Even if the Court were to agree with Plaintiffs that the

24   delayed discovery doctrine results in the tolling of the accrual date of the Plaintiffs' claims for

25   some period of time under Section 911.2(a), the Plaintiffs would still have been required to file a

26

27   _____

28   [2] The requirement is a "state substantive limitation couched in procedural language," and so does
     not apply to actions brought under Section 1983.  <u>State v. Superior Court (Bodde)</u>, 32 Cal. 4th
     1234, 1240 (2004) (quotations and citation omitted).

United States District Court
Northern District of California

1  claim with the Board and wait until the claim was acted upon before proceeding with a suit for

2  money damages.

3        The Court will therefore dismiss all state law causes of action brought by Plaintiffs other

4  than R.M. without prejudice.  If Plaintiffs' wish to plead compliance with the presentation

5  requirement in an amended complaint, they must allege facts regarding the dates by which each

6  Plaintiff became aware of the existence of their claims and the reasons why each Plaintiff could

7  not have learned of the existence of the claims at a prior date.  The conclusory, blanket statement

8  that all four Plaintiffs "did not until recently [] have any opportunity to discuss their experiences in

9  the Valley of the Moon Children's Home with an independent adult" is insufficient for the Court

10  to draw any conclusions regarding the period during which Plaintiffs' claims may have been

11  tolled.  ECF No. 10 at ¶ 2.

12        **B.      Plaintiffs' Fourth Amendment Claims**

13        Defendants seek dismissal of Plaintiffs' Fourth Amendment claims, arguing that Plaintiffs'

14  allegations do not suffice to state claims for Fourth Amendment violations.  The first clause of the

15  Fourth Amendment provides that the "right of the people to be secure in their persons, houses,

16  papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."  U.S.

17  Const. amend. IV.  "The Federal Constitution, by virtue of the Fourteenth Amendment, prohibits

18  unreasonable searches and seizures by state officers."  New Jersey v. T.L.O., 469 U.S. 325, 334

19  (1985).

20        Plaintiffs' first cause of action alleges that Does 1-100 violated Plaintiffs' Fourth

21  Amendment rights by conducting illegal searches of their persons and property, including routine

22  strip searches of female Plaintiffs.  ECF No. 10 at ¶ 46-50.  Plaintiffs' second cause of action

23  alleges that Doe Defendants unlawfully restrained Plaintiffs in violation of the Fourth

24  Amendment's prohibition on unlawful seizures.  Id. at ¶ 51-56.  Plaintiffs' third cause of action

25  alleges that Doe Defendants subjected Plaintiffs "to seizure or confiscation of their cell phones so,

26  while in VMCH, they could not communicate with friends, family, social workers, or others."  Id.

27  at ¶ 56-60.  Plaintiffs allege the supervisory and County Defendants "promulgated and enforced"

28

United States District Court
Northern District of California

the policies, customs, and practices by which these constitutional violations were conducted.  Id. at ¶ 48.

### i.    Unlawful Searches

Female Plaintiffs allege that they were illegally strip searched in violation of their Fourth and Fourteenth Amendment rights.  ECF No. 10 at ¶¶ 47-50.  All Plaintiffs assert that they were subject to comprehensive daily searches of their personal property after returning from outside activities.  Id.  Plaintiffs allege that the searches were conducted routinely, upon the Plaintiffs' return from off-site events, such as family visits or school attendance.  Plaintiffs' allegations of routine searches indicate the searches occurred in the absence of a warrant, probable cause, or reasonable suspicion of criminal wrongdoing.

Defendants argue that the alleged searches were justified because they were "reasonably related to the legitimate responsibility of the agency to protect and care for all children in the facility with service needs, for their safety and protection."  ECF No. 19 at 11.  It is true that "a search unsupported by probable cause may be reasonable when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."  Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls, 536 U.S. 822, 829 (2002).  The "special needs" standard has been applied in the context of "hospitals, see O'Connor v. Ortega, 480 U.S. 709, 725 (1987); schools, see New Jersey v. T.L.O., 469 U.S. 325, 341–43 (1985); government agencies, see National Treasury Employees Union v. Von Raab, 489 U.S. 656, 666–67 (1989); and highly regulated industries, see Skinner [v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 633]."  Id. at 231.  "However, the 'special needs' standard does not validate searches simply because a special need exists.  Instead, what is required is 'a fact-specific balancing of the intrusion . . . against the promotion of legitimate governmental interests.'"  N.G. v. Connecticut, 382 F.3d 225, 231 (2d Cir. 2004) (quoting Earls, 536 U.S. at 830).

The Court cannot conduct such a fact-specific balancing at this juncture.  Confronted with allegations of routine searches of juveniles and their possessions in the absence of a warrant, probable cause, or reasonable suspicion, the Court can only conclude that further factual discovery is needed to determine whether the searches were justified by special needs that exist in the

1   context of the VMCH facility.  Defendants' motion to dismiss the first cause of action is denied.

2              ii.      **Unlawful Restraint**

3          Plaintiffs also allege that their constitutional right against unlawful seizures was violated

4   when they were "physically restrained without cause, were locked in portions of the facility, and

5   were subjected to physical and psychological abuse."  ECF No. 10 at ¶ 30.  The only Plaintiff who

6   has pled facts regarding the alleged restraints used is R.M., whom the complaint alleges "was

7   placed in restraints, locked in rooms, denied access to his twin brother who was also housed at

8   VMCH while R.M. was there, and he was subjected to extreme psychological abuse."  Id. at ¶ 25.

9          An unconstitutional seizure occurs when there is a "restraint on liberty to the degree that a

10  reasonable person would not feel free to leave."  Doe ex rel. Doe v. Hawaii Dep't of Educ., 334

11  F.3d 906, 909 (9th Cir. 2003) (internal citation omitted).  The Fourth Amendment prohibition

12  against unlawful restraint applies to "government conduct motivated by investigatory *or*

13  *administrative* purposes," including investigation or maintenance of order.  Id. at 909 (internal

14  citations omitted) (emphasis in the original).  A seizure violates the Fourth Amendment if it is

15  objectively unreasonable under the circumstances.  Id.

16         Defendants argue that Plaintiffs' assertion that they were "physically restrained without

17  cause" is a "threadbare recital of [the] cause of action's elements, supported by mere conclusory

18  statements."  See Iqbal, 556 U.S. at 663.  The Court agrees.  Unlike Plaintiffs' allegations

19  regarding routine strip searches and searches of their physical possessions upon return to VMCH,

20  Plaintiffs here do not provide defendants enough details about the alleged restraints to give

21  Defendants sufficient notice to prepare a defense.  While Plaintiff R.M. specifies that he was

22  "placed in restraints" and locked in portions of the facility, the complaint offers no other

23  information about the circumstances under which he was restrained, the frequency of the

24  restraints, or the extreme psychological abuse he is alleged to have suffered.  See ECF No. 10 at ¶

25  25; cf. E.H. v. Brentwood Union Sch. Dist., No. C13-3243 TEH, 2013 WL 5978008, *3 (N.D.

26  Cal. Nov. 4, 2013) (motion to dismiss denied where complaint explained the details surrounding

27  the alleged restraint).  A complaint must plead enough information to "give the defendant fair

28  notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.

United States District Court
Northern District of California

1    Because Plaintiffs' complaint does not provide detail regarding the circumstances the

2    alleged restraints, the Court will grant Defendants' motion to dismiss the Second Claim.  The

3    Court will permit Plaintiff an opportunity to amend the complaint to include more factual detail

4    regarding this claim.

5                        **iii.      Seizure of Property**

6    Plaintiffs' Third Claim alleges that their Fourth Amendment right against unlawful

7    seizures of property was violated when they were subjected to "seizure or confiscation of their cell

8    phones."  ECF No. 10 at ¶ 58.  The Complaint alleges that all Plaintiffs "had their cell phones

9    seized and secured whenever they returned to the facility . . ."  FAC at 7:7-12.  Plaintiff Marvel

10   specifically alleges a seizure of property, stating that "her cell phone was taken away from her

11   when she returned from school."  Id. at ¶ 23.

12   Defendants argue that "there is no known constitutional prohibition on use of cell phones

13   while housed in the Valley of the Moon such that a seizure of cell phones while in the Valley of

14   the Moon (not while on outings from the facility) would implicate constitutional concerns."  In

15   other words, Defendants argue that a policy of seizing Plaintiffs' cell phones whenever they

16   returned to VMCH, assuming such a policy existed, could not have violated the Constitution.

17   Under the Fourth Amendment, a seizure results if "there is some meaningful interference

18   with an individual's possessory interests in [his or her] property."  Soldal v. Cook County, 506

19   U.S. 56, 61 (1992).  The government's interference with an individual's possessory interests in

20   property must be reasonable under the circumstances. Id. at 63.  Defendants suggest that they may

21   have had legitimate reasons for seizing Plaintiffs' cell phones.  ECF No. 19 at 13 ("Contact with

22   certain persons may be prohibited for legitimate reasons, including court order.").  At the pleading

23   stage, however, the Court can only dismiss Plaintiffs' claim if Defendants' seizures were lawful as

24   a matter of law.  But the Complaint does not contain any facts suggesting that the seizure was

25   lawful, and Defendants have not provided any authority from which the Court can rule as a matter

26   of law.  Defendants' motion to dismiss the third cause of action is denied.

27       **C.     Plaintiffs' First Amendment Claim—Denial of Association**

28   Defendants move to dismiss Plaintiffs' Fourth Claim, which alleges that Defendants

United States District Court
Northern District of California

10

violated their First Amendment right to association through the confiscation of cell phones and the restriction and supervision over telephone calls.  The First Amendment establishes protections for certain relationships that "presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (internal citations omitted).  Specifically, courts have recognized the "fundamental liberty interest in the companionship and society" of certain familial relationships. Id.

Plaintiffs allege that their cellphones were confiscated, they were denied the opportunity to make confidential phone calls, and were only permitted fifteen minutes a day to make calls, which thus deprived them of their ability to communicate with "friends, family, social workers, or others."  ECF No. 10 at ¶ 63.  Plaintiffs fail to provide sufficient factual detail regarding Defendants' interference with their phone privileges.  Although Plaintiffs' property seizure claim does state that Plaintiffs' cellphones were confiscated, they could not communicate with "family," the denial of association claim states that Plaintiffs were permitted to make some, limited telephone calls on a daily basis.  See ECF No. 10 at ¶ 58.  While Plaintiffs state the staff generally had control over whom Plaintiffs could call, there are no allegations that particular Plaintiffs were specifically denied the opportunity to talk to particular individuals by phone or the frequency with which such denials occurred.  See ECF No. 10 at ¶ 63.

Because Plaintiffs' complaint does not include enough factual allegations regarding the denial of Plaintiffs' right to association to put Defendants on notice of the basis of the claim, Defendants' motion to dismiss Plaintiffs' claim for denial of association is granted.  The Court will allow Plaintiffs an opportunity to amend their complaint to include more information about this claim.

### D.     Special Relationship

Although Defendants state that they seek to dismiss the Fifth Claim for Relief (Special Relationship pursuant to the Substantive Due Process clause of the Fourteenth Amendment—42 U.S.C § 1983) for failure to allege facts sufficient to support a cause of action, Defendants neither

provide legal authority nor advance any argument for this request in their motion to dismiss.  See ECF No. 19 at 7. "Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief.  Rather, we review only issues which are argued specifically and distinctly in a party's opening brief.  Significantly, a bare assertion of an issue does not preserve a claim."  Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (internal citations omitted).  Therefore, this Court will deny Defendant's motion to dismiss Plaintiff's substantive due process special relationship claim.

### E.     Unlawful Policy and Failure to Train

Plaintiffs' Sixth and Seventh Claims seek to impose Monell liability on Defendants County of Sonoma and Sonoma Human Services Department and seek to impose supervisory liability against Dunn, Kabour, and Honey for the alleged constitutional violations.

A municipality can be sued as a "person" under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 708 (1978).   Additionally, a municipality can be sued for failure to train its employers, when such an omission amounts to a policy that is deliberately indifferent to a constitutional right.  Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (internal quotations omitted).  The standard for deliberate indifference is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989).  In order to be liable for failure to train, the behavior must reflect a "deliberate or conscious choice."  Id.

Defendants seek to dismiss the constitutional claims brought against the County by relying on their argument that Plaintiffs have failed to pled any constitutional violations under the First through Fifth Claims.  ECF No. 19.  As discussed supra, however, Plaintiffs have adequately pled their unlawful search and seizure claims (First and Third Claims).  Plaintiffs have alleged these searches and seizures occurred routinely and were the official policy of County policymaking

United States District Court
Northern District of California

United States District Court
Northern District of California

1   authorities.  Plaintiffs "specify the content of the policies, customs, or practices the execution of

2   which gave rise to Plaintiffs' constitutional injuries" such as the policy to strip search children

3   upon entrance to VMCH and the daily searches of children's possessions.  Mateos-Sandoval v.

4   Cnty. of Sonoma, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013); ECF No. 10 at ¶ ¶ 29-30.

5   Plaintiffs also allege that VMCH has been investigated and cited by Community Care Licensing

6   for "unreasonable searches of personal possessions" and "seizures of residents' cell phones,"

7   which plausibly put Defendants on notice about any alleged problems with their policies.  ECF

8   No. 10 at ¶ 31.  Therefore, Defendants' motion to dismiss Plaintiffs' Monell claims regarding the

9   unlawful searches and seizures are denied.

10         Defendants also seek to dismiss Plaintiffs' claims for supervisory liability against

11   individual Defendants Karbour, Dunn, and Honey.  Defendants contend that Plaintiffs claims

12   against the supervisor Defendants are deficiently pled because "there are no factual allegations

13   relative to any of the plaintiffs which establish that any of these defendants undertook searches,

14   seizures, or associative restrictions from which this Court could infer a constitutional deprivation."

15   ECF No. 19 at 4.  Under Section 1983, a defendant may be liable as a supervisor if (1) she was

16   personally involved in the constitutional deprivation, or (2) the supervisor's wrongful conduct has

17   a sufficient causal connection to the constitutional violation.  Henry A. v. Willden, 678 F.3d 991,

18   1004-05 (9th Cir. 2012).  The pleading requirements for such a claim "may not simply recite the

19   elements of a cause of action, but must contain sufficient allegations of underlying facts to give

20   fair notice and to enable the opposing party to defend itself effectively [and] must plausibly

21   suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

22   subjected to the expense of discovery and continued litigation."  Id.

23         Plaintiffs have pled that the supervisors' "training, supervision, or control of [their]

24   subordinates" and their "indifference to the rights" of Plaintiffs was a moving force of the

25   violations perpetrated against the class.  Id. at ¶ 78.  The Complaint states that Defendant Dunn

26   has policy making authority and is responsible for the implementation and maintenance of policies

27   "relating to intake of children, searches of their persons and possessions, use of restraints,

28   restriction on access to cell phones and land lines, and other general practices and procedures at

United States District Court
Northern District of California

1   the facility." <u>Id.</u> at ¶ 26. The Complaint also asserts that Defendant Honey possesses policy

2   making authority and is responsible for the implementation and maintenance of policies "relating

3   to searches of the persons and property of the residents of VMCH, the discipline of residents, the

4   seizures of their property, and the investigation of complaints." <u>Id.</u> at ¶ 27.  The complaint alleges

5   that Defendant Kabour also "possesses policy-making authority over administration, management

6   and operation of the VMCH, and is responsible for the implementation and maintenance of

7   VMCH's policies, including, without limitation, policies relating to searches of the persons and

8   property of the residents of VMCH, the discipline of residents, the seizures of their property, and

9   the investigation of complaints." <u>Id.</u> at ¶ 28.

10          Given that Plaintiffs have pled that individual supervisory Defendants have control over

11  the formation and implementation of the allegedly-unconstitutional polices at VMCH, the Court

12  concludes Plaintiffs have stated a plausible claim against those Defendants.  <u>See</u> <u>OSU Student</u>

13  <u>Alliance v. Ray</u>, 699 F.3d 1053, 1078 (9th Cir. 2012) (holding that "Discovery will reveal whether

14  [alleged supervisor's] stewardship of the policy in fact [caused the alleged constitutional

15  violation]. All that matters at this stage is that the allegations nudge this inference 'across the line

16  from conceivable to plausible.'").  Defendants' motion to dismiss constitutional claims against the

17  supervisor Defendants is denied.

18          **G.      Plaintiffs' Intentional Infliction of Emotional Distress Claim**

19          Defendants move to dismiss Plaintiff's intentional infliction of emotional distress claim.

20  To state a claim for intentional infliction of emotional distress, a plaintiff must show:

21  "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless

22  disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or

23  extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the

24  defendant's outrageous conduct." <u>George v. Sonoma County Sheriff's Dep't</u>, No. C-08-02675

25  EDL, 2009 WL 656299, *6 (N.D. Cal. Mar. 12, 2009) (citing <u>Trerice v. Blue Cross of Cal.</u>, 209

26  Cal.App.3d 878, 883 (1989); <u>Davidson v. City of Westminster</u>, 32 Cal.3d 197, 209 (1982)).  "In

27  order to be considered outrageous, the conduct must be so extreme as to exceed all bounds of that

28  usually tolerated in a civilized community." <u>Tekle v. United States</u>, 511 F.3d 839, 855 (9th Cir.

1    2007).

2         Defendants argue that Plaintiffs have not pled what actions taken by supervisory

3    Defendants are alleged to have constituted outrageous conduct.  The Court agrees, as Plaintiffs'

4    allegations of intentional infliction of emotional distress merely regurgitate the elements of the

5    cause of action under California law while seeking to incorporate by reference the entirety of the

6    allegations made elsewhere in the Complaint.  Plaintiffs' opposition only notes that they are

7    proceeding under a theory of supervisory rather than vicarious liability.  ECF No. 23 at 19.

8    Nevertheless, Plaintiffs need to provide additional factual detail regarding which actions by which

9    Defendants they allege were so extreme as to exceed all bounds of that usually tolerated in a

10   civilized community and which Plaintiffs suffered what kinds of severe and extreme emotional

11   distress as a result.

12        Defendants' motion to dismiss Plaintiffs' IIED claim is granted.   Plaintiffs will be given

13   leave to amend.

14        **H.      Plaintiffs' Bane Act Claim**

15        Plaintiffs' Bane Act claim alleges that Defendants' acts, omissions, customs, and policies

16   violated Plaintiffs' constitutional rights.   Specifically, Plaintiffs allege that they "were coerced to

17   submit to searches of their persons and possessions upon return to VMCH from school and/or

18   other activities, and were subject to illegal strip searches.  When they refused to cooperate in

19   surrendering their cell phones or submitting to searches, they were threatened, were isolated and

20   detained, and were otherwise disciplined until they submitted to the authority of Defendants."

21   ECF No. 10 at ¶ 114.

22        California's Bane Act, codified at Civil Code Sections 52.1(a) and (b), provides a private

23   right of action for damages against any person, whether acting under color of law or not, who

24   interferes or attempts to interfere "by threats, intimidation, or coercion, with the exercise or

25   enjoyment by any individual or individuals of rights secured by the Constitution or laws of the

26   United States, or of the rights secured by the Constitution or laws" of California.  M.H. v. Cnty. of

27   Alameda, No. 11-CV-02868 JST, 2013 WL 1701591, *5 (N.D. Cal. Apr. 18, 2013).  Defendants

28   argue that Plaintiffs' Bane Act Claim is "deficient as a whole" because they must plead an

United States District Court
Northern District of California

15

1    additional "showing of coercion independent from" the inherent coercion that originates from

2    every wrongful detention and search.  ECF No. 19 at 7 (citing <u>Shoyoye v. Cnty. of Los Angeles</u>,

3    137 Cal. Rptr. 3d 839, 849-50 (2012)).  The rule cited by Defendants only applies to unintentional

4    conduct, which Plaintiffs do not allege.  <u>See</u> ECF No. 23 at 20; <u>M.H. v. Cnty. of Alameda</u>, No. 11-

5    CV-02868 JST, 2013 WL 1701591, *8 (N.D. Cal. Apr. 18, 2013) ("this Court agrees with other

6    courts holding that, at the pleading stage, the relevant distinction for purposes of the Bane Act is

7    between intentional and unintentional conduct, and that <u>Shoyoye</u> applies only when the conduct is

8    unintentional."); <u>D.V. v. City of Sunnyvale</u>, 65 F. Supp. 3d 782, 789 (N.D. Cal. 2014) ("This court

9    therefore follows the substantial and growing authority that restricts <u>Shoyoye</u> to cases where the

10   defendant's actions were negligent [and holds that] Section 52.1 does not require threats, coercion,

11   or intimidation independent from the threats, coercion, or intimidation inherent in the alleged

12   constitutional or statutory violation.").  Plaintiffs have alleged that (1) that Defendant Does'

13   behavior was intentional and (2) that they coerced plaintiffs through threats and punishment (3) in

14   violation of their Constitutional rights.  Therefore, Plaintiff R.M. states a sufficient claim for relief

15   for the Bane Act as to Defendant Does.

16        Additionally, because Plaintiffs adequately state a Bane Act claim with respect to Does 1-

17   100, their liability also gives rise to respondeat superior liability with respect to Defendants

18   County of Sonoma, HSD, and FYCS under traditional California common law principles.  <u>See</u>

19   <u>M.H. v. Cnty. of Alameda</u>, No. 11-CV-02868 JST, 2013 WL 1701591, *6 (N.D. Cal. Apr. 18,

20   2013) (recognizing availability of respondeat superior liability for violations of Bane Act).

21   Defendants motion to dismiss Plaintiff R.M.'s Bane Act claim is denied.

22        **I.      Statutory Immunity**

23        In their Eighth through Eleventh Claims, Plaintiffs allege that Defendants violated

24   California Welfare and Institutions Code section 16001.9, based on their alleged actions in

25   performing unlawful searches (Eight Claim), imposing unlawful restraints (Ninth Claim),

26   performing unlawful seizures of property (Tenth Claim), and unlawful committing unlawful

27   denials of association (Eleventh Claim).  Plaintiffs allege that Defendants are therefore liable

28   under California Government Code sections 815.2(a) and 820.  Defendants argue that they are

United States District Court
Northern District of California

16

protected by statutory immunity and thus cannot be liable for any state law claim.  ECF No. 19 at

6.

       The provisions of Section 16001.9 most pertinent to this litigation state:

> (a) It is the policy of the state that all minors and nonminors in foster care shall
> have the following rights: . . . .

>> (6) To contact family members, unless prohibited by court order, and social
>> workers, attorneys, foster youth advocates and supporters, Court Appointed
>> Special Advocates (CASAs), and probation officers.

>> (7) To visit and contact brothers and sisters, unless prohibited by court
>> order.

>> (8) To contact the Community Care Licensing Division of the State
>> Department of Social Services or the State Foster Care Ombudsperson
>> regarding violations of rights, to speak to representatives of these offices
>> confidentially, and to be free from threats or punishment for making
>> complaints.

>> (9) To make and receive confidential telephone calls and send and receive
>> unopened mail, unless prohibited by court order . . . .

>> (12) To not be locked in a room, building, or facility premises, unless
>> placed in a community treatment facility . . . .

>> (21) To be free from unreasonable searches of personal belongings.

       As with Plaintiffs' federal constitutional claims for unlawful restraint and denial of

association, Plaintiffs have not pled sufficient factual allegations regarding these state law claims.

ECF No. 10 at ¶¶ 87-104.  Because Plaintiffs have pled sufficient facts regarding their unlawful

search and seizure claims under Federal law, however, the Court turns to the question of whether

those allegations also state a claim for violation of state law.

       Defendants seek to invoke several bases for immunity against Plaintiffs' state law claims.

First, Defendants argue they are entitled to discretionary act immunity under Cal. Govt. Code

Section 820.2.  They read this section as stating that they cannot be liable for unreasonable

searches unless Plaintiffs can show that Defendants have violated a mandatory statutory duty.

ECF No. 19 at 6 (relying on Cnty. of Los Angeles v. Superior Court (Tyrell R.), 102 Cal. App. 4th

627, 638 (2002)).  But the Ninth Circuit has disavowed the Tyrell R. decision's interpretation of

discretionary act immunity, concluding that it is in "conflict with the principles consistently followed in California Supreme Court decisions."  AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 639 (9th Cir. 2012).  As explained by the Ninth Circuit in AE, the California Supreme Court has instructed courts "to construe the scope of the discretionary act immunity as narrowly as possible to preserve the separation of powers."  Id.  "Government defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who consciously balanced risks and advantages," and "not all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of section 820.2."  Id. (internal citations and quotations omitted).  Therefore, such a claim of immunity can generally not be resolved at a motion to dismiss.  See id., 666 F.3d at 640 (noting that "[i]t would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants.")  Defendants have not yet shown they are entitled to discretionary immunity under Section 820 and their motion to dismiss on this basis is denied.

County and supervisory Defendants also argue they are not liable for acts of their subordinates under state law.  Government Code Section 820.8 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person.  Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."  As discussed above, individual Defendants are alleged to be liable as supervisors who created and implemented the challenged search policy.  Therefore, the Complaint does not allege they are liable for the acts of another person, but rather for their own actions.

County Defendants also point to Government Code Section 815, which reads that "California public entities are not subject to common law tort liability; all liability must be pursuant to statute."  See Cal. Gov't Code § 815; Cnty. of Los Angeles v. Superior Court (Terrell R.), 125 Cal. Rptr.2d 637 (Cal. Ct. App. 2002).  However, under Government Code Section 815.2, "California public entities, including local governments, are derivatively liable for the negligent acts or omissions of public employees within the scope of their employment."  AE, 666 F.3d at

18

1    638.  Therefore, to dismiss the County as immune when its employees may be found liable would

2    be in error.  Id.

3         Defendants' motion to dismiss Plaintiff R.M.'s Eighth Claim for unreasonable searches

4    and his Tenth Claim for unlawful seizure of property is denied.  Defendants' motion to dismiss

5    Plaintiff R.M.'s Ninth and Eleventh Claim is granted with leave to amend.

6         **J.    Punitive Damages**

7         Defendants seek to strike Plaintiffs' prayer for punitive damages under each cause of

8    action against Plaintiffs against Defendants Dunn, Hoeny, Kabour, and Does 1-100.  ECF No. 10

9    at 22.  Punitive damages may not be assessed in Section 1983 actions against a government entity

10   or a governmental officer in her official capacity.  Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir.

11   1996).[3]  However, suits against government officers in their individual capacities are not

12   equivalent to suits against the government entity itself.  Kelly v. Sogge, No. CV-08-1823 CTB,

13   2010 WL 99375, *7 (E.D. Cal. Jan. 8, 2010).  Punitive damages may only be assessed in § 1983

14   actions when the officer's "conduct is shown to be motivated by evil motive or intent, or when it

15   involves reckless or callous indifference to the federally protected rights of others."  Dubner v.

16   City & Cnty. of San Francisco, 266 F.3d 959, 969 (9th Cir. 2001) (quoting Smith v. Wade, 461

17   U.S. 30, 56 (1983).  The Ninth Circuit defines "deliberate indifference" as "the conscious choice

18   to disregard the consequences of one's acts or omissions."  Castro v. Cnty. of Los Angeles, No.

19   12-56629, 2015 WL 4731366, at *11 (9th Cir. Aug. 11, 2015); see also 9th Cir. Civ. Jury Instr. 9.7

20   (2007).

21        Defendants assert that Plaintiffs have not pled sufficient factual information to demonstrate

22   that individually-named Defendants are potentially liable for punitive damages.  ECF No. 19 at

23   12-13.  However, Plaintiffs have specifically alleged that Defendants were "motivated by evil

24   motive or intent, or involved reckless or callous indifference to . . . rights secured by the United

25   States Constitution" (ECF No. 10 at ¶¶ 49, 54, 59, 64, 69, 74, and 79).  Furthermore, Plaintiffs

26   allege specific facts that could indicate Defendants made a "conscious choice to disregard" their

27

28   _____
     [3] Plaintiffs have not requested punitive damages against the County.

                                        19

1    actions or omissions.  See Castro, 2015 WL 4731366, at *11 (9th Cir. Aug. 11, 2015).

2    Specifically, Plaintiffs assert that  "[i]nstead of remedying violations repeatedly brought to their

3    attention by Community Care Licensing, a division of the California Department of Social

4    Services, and others of which the residents have complained, defendants have failed to take

5    affirmative or effective action to address the violations and deplorable conditions rampant in

6    Valley of the Moon Children's Home."  ECF No. 10 at 2.  While Plaintiffs will have to prove that

7    Defendants acted with the requisite mental state in order to recover punitive damages, at the

8    motion to dismiss stage Plaintiffs have pled facts sufficient to suggest it is possible Defendants

9    acted with deliberate indifference as to the rights of Plaintiffs.  For these reasons, Defendants'

10   motion to dismiss any request for punitive damages is denied.

11   IV.    **CONCLUSION**

12          The Court hereby grants Defendants' motion to dismiss Plaintiffs' Second and Fourth

13   Claims under Section 1983.  The Court denies Defendants' motion to dismiss Plaintiffs' First,

14   Third, Fifth, Sixth, and Seventh Section 1983 claims.

15          The Court grants Defendants' motion to dismiss the state law claims of all Plaintiffs' other

16   than R.M.  The Court also grants Defendants' motion to dismiss Plaintiff R.M.'s Ninth, Eleventh,

17   and Twelfth state law claims.  The Court denies Defendants' motion to dismiss Plaintiff R.M.'s

18   Eighth, Tenth, and Thirteenth claims.

19          The Court grants Plaintiffs leave to amend all dismissed claims.  If Plaintiffs wish to file an

20   amended complaint in response to this order, they must do so no later than October 5, 2015.

21          IT IS SO ORDERED.

22   Dated: September 12, 2015

23

24   _____
                 JON S. TIGAR
25           United States District Judge

26

27

28